```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
ASTON BAKER,                                            :
                                                        :
                           Appellant,                   :        **MEMORANDUM & ORDER**
                                                        :
              -against-                                 :           08-CV-1855 (DLI)
                                                        :
CHARLES SIMPSON, ESQ., WINDELS                          :
MARX LANE & MITTENDORF, LLP,                            :
STANLEY GALLANT, GALSTER                                :
CAPITAL LLC, GARLSTER                                   :
MANAGEMENT CORP., ALLSTATE                              :
INSURANCE COMPANY, AND                                  :
JP MORGAN CHASE BANK, N.A.,                             :
                                                        :
                                                        :
                           Appellees.                   :
------------------------------------------------------- X
```

**DORA L. IRIZARRY, United States District Judge:**

On October 23, 2007, appellant Aston Baker filed a claim in the Supreme Court of New York, Kings County ("state court") against appellees, alleging legal malpractice, conversion, negligence, fraud, and intentional misrepresentation. Appellees Charles E. Simpson, Esq. ("Simpson") and Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), removed the matter to the United States Bankruptcy Court for the Eastern District of New York ("bankruptcy court") based on appellant's ongoing reorganization under Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* ("Bankruptcy Code"). Appellant then moved to remand the case to state court, which motion was denied by the bankruptcy court on March 6, 2008. That denial is the basis for this appeal. For the reasons set forth below, the March 6, 2008 decision of the bankruptcy court is affirmed.

## I. Background

The following facts are taken from appellant's brief or are undisputed, except where otherwise noted. On November 15, 2001, appellant filed a petition with the bankruptcy court under Title 7 of the Bankruptcy Code, which was converted by court order to a Title 11 reorganization proceeding on January 25, 2002. (*See* Order Granting Mot. to Convert Case from Title 7 to Title 11, Dkt # 11.

On February 8, 2002, Simpson and Windels Marx, the law firm to which Simpson belonged, were appointed by the bankruptcy court as counsel for appellant and two additional entities for which appellant was the sole or controlling shareholder, in their jointly administered Title 11 cases. (*See* Order Authorizing Retention of Windels Marx Lane & Mittendorf as Attorney for Debtor-in-Possession, Dkt. # 20.) Appellant brings claims related to legal malpractice, conversion, negligence, fraud and intentional misrepresentation, based primarily on four incidents that occurred during the course of Simpson's engagement as counsel in connection with appellant's bankruptcy petition.

First, appellant independently found a broker that allegedly would refinance all his properties and net him enough money to pay off his creditors. On the advice of Simpson, appellant did not retain such broker, and, instead, refinanced through appellee Galster Capital LLC ("Galster"), whose services were procured by Simpson. The bankruptcy court issued three orders, dated April 17, 2003 (Dkt. # 142), June 4, 2004 (Dkt. # 207), and July 2, 2004 (Dkt. # 214), authorizing and approving mortgage loans from Galster to appellant. Appellant now claims that Galster misrepresented itself as a lender, and, after two years, failed to fund the loan as agreed, causing appellant to forgo offers from other prospective lenders, incur legal fees, and accrue interest on his debt.

Second, at the inception of the Title 11 case, during a status conference before the bankruptcy court, Simpson allegedly misrepresented that appellant was holding security deposits for the tenants at one of the buildings that formed part of appellant's bankruptcy estate. Simpson then allegedly produced a document bearing appellant's forged signature to substantiate said misrepresentation. As a result, all tenants were erroneously added to appellant's list of creditors pursuant to Rule 1007-1 of the Eastern District of New York's Local Bankruptcy Rules.

Third, Simpson allegedly arranged an auction sale of two of appellant's commercial properties that resulted in winning bids by Simpson's friends or affiliates. Although appellant alleges that Simpson arranged these sales without communicating to appellant his intent to proceed, the record shows that at least one of these sales was approved by the bankruptcy court. (*See* Order Granting Mot. to Sell Free and Clear of Liens Real Property located at 1801 Pitkin Avenue, Brooklyn, NY on April 23, 2002, Dkt. # 37.) After a prospective buyer moved to reopen the sale, the bankruptcy court issued an order on May 3, 2002 vacating the original sale and scheduling a new sale on notice. (*See* Decision and Order Granting Mot. to Vacate the Oral Decision of the Court on April 23, 2002, Approving the Sales of Pitkin Avenue Property & Forest Avenue Property, Dkt. # 52.)[1] The winning bids were for significantly higher amounts than those offered in the initial, allegedly fixed auction arranged by Simpson.[2]

---

[1] Appellant alleges misconduct with respect to the auction sale of two properties: 1801 Pitkin Avenue, Brooklyn, New York and 2353 Foster Avenue, Brooklyn, NY. Assuming that the reference to the "Forest Avenue Property" reflects a typographical error and actually refers to the "Foster Avenue Property," the May 3, 2002 order could be construed to vacate the initial sale of both properties.

[2] Simpson and Windels Marx claim that both properties were ultimately sold in accordance with a bankruptcy court order dated June 4, 2002. (Dkt. # 60.) The June 4, 2002 order, however, appears to pertain only to the 1801 Pitkin Avenue property. The court does not find any evidence on the record of a court order approving the sale of the 2353 Foster Avenue property. As this dispute is not material to the jurisdictional issue on appeal, the court need not resolve the discrepancy.

Fourth, after his primary residence was destroyed in a fire, appellant submitted a claim to appellee Allstate Insurance Company. Allstate Insurance Company is alleged to have acted negligently when, at Simpson's direction, it deposited the insurance proceeds into a JP Morgan Chase account under appellant's name. Appellee JP Morgan Chase allegedly breached its duty to appellant by allowing Simpson to open that account under appellant's name without appellant's knowledge or consent, and designate himself the only signatory on the account. Simpson allegedly converted the Allstate Insurance Company proceeds in the JP Morgan Chase account for his personal use.

Appellant filed his cause of action in state court on October 23, 2007. On November 21, 2007, appellees filed a motion to remove the matter to federal bankruptcy court, arguing that it was within the bankruptcy court's jurisdiction based on appellant's ongoing reorganization under Title 11. After the state court removed the matter from its calendar on January 11, 2008, appellant moved to remand the case to state court or to another federal district court. On March 6, 2008, the bankruptcy court heard oral argument and ruled from the bench, denying appellant's motion.[3] (Transcript of Hearing before Hon. Dennis E. Milton, dated March 6, 2008 ("Tr."), at 17:20-18:5.) Appellant filed a timely Notice of Appeal from the bankruptcy court's March 6, 2008 order.

---

[3] In addition to denying appellant's motion to remand, the bankruptcy court also dismissed appellant's case in its entirety. (*See* Tr. at 18:24-19:6.) Indeed, appellee JP Morgan Chase invites the court to consider on appeal whether the bankruptcy court properly dismissed the underlying action. However, Appellant does not challenge the merits of the bankruptcy court's dismissal of the complaint, but rather limits his appeal to review of the bankruptcy court's assertion of jurisdiction over this matter and its refusal to abstain from considering the same. Accordingly, the court need not address the merits of appellant's substantive claims.

## II. Discussion

Appellant's Title 11 petition was referred to bankruptcy court pursuant to 28 U.S.C. § 157(a) (2006), which allows bankruptcy judges to hear "any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11." A district court reviews a bankruptcy court's findings of fact for clear error, its conclusions of law *de novo*, and its decision to award costs, attorneys' fees, and damages for abuse of discretion. *In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 103 (2d Cir. 2000).

Appellant contends that the bankruptcy court's assertion of jurisdiction over the state court matter should be reversed because the bankruptcy court erred in finding that it had continuing jurisdiction of appellant's pending Title 11 case under 28 U.S.C. § 1334(a). Sections 1334(a) and (b) establish the jurisdiction of the federal district courts over Title 11 matters. *See* 28 U.S.C. §§ 1334(a)-(b) (2006). Section 1334 provides in relevant part:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under [T]itle 11.
> (b) . . . [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or other courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11.

28 U.S.C. § 1334. Permissive abstention in a core proceeding is left to the bankruptcy court's discretion. 28 U.S.C. § 1334(c) (2006); *see also In re Petrie Retail*, 304 F.3d 223, 232 (2d Cir. 2002). Appellant argues that, because the estate is fully disposed of, the instant claim cannot have any conceivable effect on the bankruptcy case, and is thus unrelated to the bankruptcy case. As such, it is beyond the bankruptcy court's jurisdiction. He argues further that, even if the court

has jurisdiction over this matter, the action should have been remanded to state court as a matter of discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1). [4]

The court finds that the bankruptcy court had continuing jurisdiction over appellant's claim, and that Section 1334(c)(1) does not disturb the bankruptcy court's exercise jurisdiction over appellant's claims.

### A. Jurisdiction

Appellant contends that the bankruptcy court's jurisdiction over his claims was circumscribed by the disposal of his estate. Once all the property has been disposed of, he argues, the Title 11 proceeding terminated, and, with it, the court's original jurisdiction under Section 1334(a) over the instant case.

The court finds that the disposal of appellant's estate is immaterial to the jurisdictional issue for two reasons. First, "a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005) (internal quotation marks omitted). Second, the Title 11 case ends only when it is closed under Section 350(a) of Title 11, and not, as appellant argues, with disposition of the estate. *See* 11 U.S.C. § 350(a) (2006).

---

[4] In his appellate brief, appellant concedes—and this court agrees—that Section 1334(c)(2)'s mandatory abstention provisions are inapplicable in this case, because this matter includes claims that pertain to "core" bankruptcy functions. *See In re SPI Commc'ns & Mktg., Inc. v. Sanders*, 114 B.R. 14, 18 (N.D.N.Y. 1990) (affirming a bankruptcy court's exercise of jurisdiction over a claim dealing with an attorney's alleged malpractice in a bankruptcy proceeding because the claims were "core proceedings" that "arose post-petition" and "would not exist but for the Debtor's bankruptcy petitions"); *see also In re Ben Cooper*, 896 F.2d 1394, 1400 (2d Cir. 1990) (quoting *In re Wood*, 825 F.2d 90 (5th Cir. 1987)) (holding that "a proceeding that, by its nature, could arise only in the context of a bankruptcy case" is a "core" matter, subject to the jurisdiction of the bankruptcy court). Accordingly, the court limits its analysis to Section 1334(c)(1), which deals with discretionary abstention.

The question of whether the bankruptcy court has exclusive jurisdiction over appellant's claims is similarly immaterial, as is appellant's assertion that it is unlikely that his state court claims will have any conceivable effect on the bankruptcy case. For this court to uphold the exercise of jurisdiction, the bankruptcy court need not have exclusive jurisdiction under Section 1334(a), or find that appellant's claims are "related to" his bankruptcy petition. As set forth below, the court finds that appellant's claims are civil proceedings arising in a case under Title 11, and are thus subject to the bankruptcy court's jurisdiction under Section 1334(b). 28 U.S.C. § 1334(b).

District courts in this circuit have found that "[a] matter 'arises in' [T]itle 11 when 'the gravamen of the proceeding arises in the particular bankruptcy case and would have no existence outside of bankruptcy,'" even if the matter is not based on any right expressly created by Title 11. *D.A. Elia Constr. Corp. v. Damon & Morey, LLP,* 389 B.R. 314, 317 (W.D.N.Y. 2008) (citation omitted). Since claims arising out of services rendered in connection with a debtor's bankruptcy proceeding "are inextricably connected to the bankruptcy proceeding," courts generally find "no bar, statutory, constitutional, or otherwise, to the [b]ankruptcy [c]ourt exercising jurisdiction" over such claims. *In re SPI Commc'ns & Mktg., Inc.*, 114 B.R. at 18.

For instance, in *D.A. Elia Construction Corp.*, a plaintiff asserted various claims against a law firm for failure to provide adequate legal representation in connection with a Title 11 petition and related proceedings, alleging, *inter alia*, legal malpractice and conversion of funds belonging to the bankruptcy estate. 389 B.R. at 317. The district court found that "there can be no doubt that all of [plaintiff's] state law claims 'arise in' the bankruptcy proceeding within the meaning of 28 U.S.C. § 1334 . . . But for [the law firm's] representation of [plaintiff] in the bankruptcy case, there would be no cause of action." *Id*.

7

Similarly, in *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, a plaintiff sued a defendant law firm alleging legal malpractice and breach of fiduciary duty for advice rendered during his personal bankruptcy and the bankruptcy of a company that he owned and managed. 05 Civ. 9137 (DLC), 2006 WL 839079 (S.D.N.Y. March 31, 2006). The district court upheld the exercise of jurisdiction over state law claims by a bankruptcy court, finding, *inter alia*, that because some of the claims "arise out of advice provided by [law firm] to [plaintiff] *in his bankruptcy proceeding*, they cannot be considered independent of that petition." *Id*. at *3.

Here too, the gravamen in each claim is that Simpson and Windels Marx provided substandard legal services in the course of representing appellant in his Title 11 and related legal proceedings. Appellant's case, which asserts claims of legal malpractice, conversion, negligence, fraud and intentional misrepresentation, would have no existence but for the bankruptcy. The bankruptcy court appointed Simpson and Windels Marx as bankruptcy counsel, and appellant's relationship with all appellees arose only in connection with his Title 11 proceeding. The Galster mortgage loans that appellant complains about were authorized and approved by the bankruptcy court, as were the allegedly fixed auction sales. Moreover, to the extent that Simpson made misrepresentations during a bankruptcy court hearing and fraudulently or negligently added certain tenants to his list of creditors, this claim is inseparable from the bankruptcy context. With respect to appellant's claims concerning the collection and disbursement of insurance proceeds, appellees respond that the JP Morgan Chase account and insurance proceeds were handled pursuant to and consistent with bankruptcy court orders. (*See* Tr. 12:2-21; 18:2-5.) The alleged malpractice thus implicates the integrity of the entire bankruptcy process. As such, appellant's claims "arise in" the Title 11 case, and Section 1334(b) clearly gives the bankruptcy court jurisdiction over them. *See Elia Constr. Corp.*, 389 B.R. at 318.

Although the Second Circuit has not directly considered whether claims of professional malpractice based on services rendered pursuant to a Title 11 petition fall within Section 1334's scope of jurisdiction, this court's holding is consistent with the conclusions reached by other circuit courts addressing the issue. *See, e.g.*, *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 259, 262 (3d Cir. 2007) (internal quotation marks omitted) (finding that state law "claims of professional malpractice . . . based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court," are subject to the court's Section 1334(b) "arising in" jurisdiction); *In re V&M Mgmt., Inc.*, 321 F.3d 6, 7 (1st Cir. 2003) (where allegations of fraud, professional malpractice, and breach of fiduciary duties by legal counsel "wholly arise out of the . . . counsel's performance of their duties with respect to the Debtor after the petition for bankruptcy was filed," such claims are subject to the court's jurisdiction under Section 1334(b)); *Grausz v. Bradford*, 321 F.3d 467, 469 (4th Cir. 2003) (holding that the district court had bankruptcy jurisdiction over a professional malpractice action filed by a Title 11 debtor against the law firm that represented him in his bankruptcy case under Section 1334(b) "because the malpractice claim arose in the bankruptcy case"); *see also In re Southmark Corp*, 163 F.3d 925, 931 (5th Cir. 1999); *In re Ferrante*, 51 F.3d 1473, 1476 (9th Cir. 1995).

### B. Abstention

Appellant contends that, even if the bankruptcy court had jurisdiction over his claims, it should have abstained from hearing the state court action. Section 1334(c)(1) gives the district court the power to abstain from hearing civil proceedings arising under Title 11, or arising in or related to cases under Title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). This section "is informed by and

9

interpreted according to 'the principles developed under the judicial abstention doctrine,'" which impose on federal courts a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Norkin*, 2006 WL 839079, at *5 (citations omitted). Accordingly, federal courts "may abstain only for a few 'extraordinary and narrow exceptions.'" *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

Courts often apply a twelve-factor test, or some variation of it, to decide whether to abstain from hearing a lawsuit related to a bankruptcy under Section 1334(c)(1). *See, e.g.*, *In re Bay Point Assocs.*, No. 07 Civ. 1492 (JS), 2008 WL 822122, at *2-3 (E.D.N.Y. Mar. 19, 2008); *In re Twin Labs. Inc.*, 300 B.R. 836, 841 (S.D.N.Y. 2003). The twelve factors are:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*See In re Twin Labs. Inc.*, 300 B.R. at 841 (citations omitted). Here, these twelve factors do not favor discretionary abstention.

Most significantly, although appellant's causes of action "are styled as New York State law claims, they turn largely on issues that are intertwined" with his bankruptcy, including the propriety of Simpson and Windel Marx's advice regarding his bankruptcy proceedings. *Norkin*, 2006 WL 839079, at *5. In *Norkin*, which also involved allegations of legal malpractice for advice rendered by a law firm during a debtor's Title 11 proceedings, the court refused to

exercise discretionary abstention because "[s]tate law issues do not predominate here," and where such issues did arise, "they are in the well settled areas of professional malpractice, negligence, and breach of fiduciary duty." *Id.* A similar conclusion is warranted here.

Indeed, shortly before appellant commenced this matter, the bankruptcy court considered whether discretionary abstention was appropriate in the adjudication of a previous adversarial proceeding brought by appellant in this same Title 11 case. *In re Baker*, 374 B.R. 498, 505 (E.D.N.Y. 2007). The bankruptcy court noted that "this is a complicated case which has been pending in this Court for more than six years and with which [the bankruptcy court] is very familiar." *Id.* It found that "[n]one of the [aforementioned] factors are present to any degree, let alone one sufficient to conclude that abstention would be appropriate, or even desirable, at the relatively late, post-confirmation stage of this case." *Id.* Similarly, retention of federal jurisdiction in this matter facilitates the efficient administration of the estate, especially since consideration of the merits of appellant's claims necessarily implicates a review of the bankruptcy court's orders approving, authorizing, and supervising each of the actions at issue. Accordingly, the court affirms the bankruptcy court's refusal to exercise discretionary abstention over appellant's claims.

### III. Conclusion

For the reasons set forth above, the appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
August 18, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge